1
2
3
4
5
6
7
8                      IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES ANTHONY GUERRERO

11              Plaintiff,                    No.  2:10-cv-0318 GEB DAD P

12        vs.

13   S. McCLURE, et al.,

14              Defendants.                   FINDINGS AND RECOMMENDATIONS

15

16   _____/

17            Plaintiff, a state prisoner, is proceeding pro se with a civil rights action filed

18   pursuant to 42 U.S.C. § 1983 against five named defendants.  Defendant correctional officer

19   McClure has moved for summary judgment with respect to plaintiff's claims against him arising

20   under the First and Eighth Amendments.  (Doc. No. 81.)  Plaintiff opposes the motion.  (Doc.

21   Nos. 90-91.)  Defendant McClure has filed a reply.  (Doc. No. 93.)

22                           **ALLEGATIONS IN THE COMPLAINT**

23            In his verified complaint signed under penalty of perjury, plaintiff alleges as

24   follows with respect to his claims against defendant McClure.  On April 22, 2009, at

25   approximately 9:00 p.m., defendant McClure escorted plaintiff to his cell, closed the cell door,

26   and opened the "food port" to remove plaintiff's handcuffs.  (Doc. No. 1 at 6.)  McClure

                                               1

1  removed plaintiff's left wrist cuff and, upon having difficulty removing the right wrist cuff,

2  yelled at plaintiff to "turn the fuck around" as he "yanked and slammed" plaintiff's right wrist

3  into the food port/cell door.  (Id.)  Plaintiff yelled at McClure to stop pulling on the cuff, however

4  McClure "kept pulling on the cuff . . . ."  (Id. at 6.)

5            Correctional officer Montes then approached the cell, asked defendant McClure to

6  let go of plaintiff, and inquired of plaintiff "what is going on?"  (Id. at 6-7.)  Montes then

7  removed plaintiff's right wrist cuff and asked "if [plaintiff] was cool."  (Id. at 7.)  Both McClure

8  and Montes then left to escort other inmates.  (Id.)  Defendant McClure did not return and did not

9  make a report of the incident within 24 hours.  (Id. at 7, 9.)

10            Sometime after 10:00 p.m. that same night, plaintiff requested medical attention

11  and was treated for a swollen wrist with an ice pack.  (Id. at 8.)  Subsequently, he was seen by

12  prison medical staff on three separate occasions.  (Id.)  Plaintiff alleges that he lost feeling in

13  three fingers of his right hand and was placed in a cast for 6-8 weeks as a result of the incident.

14  (Id.)  Plaintiff filed a timely CDCR-602 inmate appeal in which he complained of defendant

15  McClure's use of force.  (Id.)

16            On May 2, 2009, plaintiff received a CDCR-115 Rules Violation Report authored

17  by defendant McClure on April 30, 2009, charging plaintiff with "resisting staff resulting in the

18  use of force."  (Id. at 9.)  On May 29, 2009, plaintiff was escorted to a disciplinary hearing on

19  that rules violation report  (Id. at 11.)  The correctional officer who presided over that hearing

20  found plaintiff guilty of the charge of resisting staff resulting in use of force.  (Id. at 13.)  As a

21  result of this prison  disciplinary conviction, plaintiff was apparently assessed a 90-day loss of

22  good time credit.[1]  (Id. at 119.)

23

24            [1]  Plaintiff alleges in his complaint that: "No time was taken because of the time limit
violations . . . ."  (Doc. No. 1 at 13.)  However, an exhibit attached to plaintiff's complaint

25  indicates to the contrary, reflecting that a loss of 90 days of credit was assessed against him on
this disciplinary conviction.  (Id. at 119.)  Plaintiff's exhibits additionally reflect that his inmate

26  appeal log # SOL-09-01669, in which he appealed the result of this disciplinary proceeding, was

1        On June 2, 2009, plaintiff's arm/wrist was again examined and x-rays were taken.[2]

2   (Id. at 9.)  On June 22, 2009, an MRI was performed on plaintiff's arm/wrist.[3]  (Id.)  On or about

3   January 10, 2010, plaintiff saw a physical therapist and was referred to an orthopedic surgeon.

4   (Id.)  Subsequently, at an unspecified time, plaintiff was diagnosed as suffering from carpal-

5   tunnel syndrome and "radial neurotheropy (sic)."  (Id.)

6        In his complaint plaintiff claims that defendant McClure:  (1) used excessive force

7   against him in violation of the Eighth Amendment; (2)  was deliberately indifferent to plaintiff's

8   serious medical needs in violation of the Eighth Amendment; and (3) retaliated against plaintiff

9   for engaging in protected activity, pursuing an inmate grievance, in violation of the First

10  Amendment.  Plaintiff seeks a declaratory judgment that defendant McClure violated his

11  constitutional rights as alleged, injunctive relief barring defendant McClure from further

12  retaliation against him, plus monetary damages and costs of suit.  (Id. at 15-16.)

13  _____

14  denied at all levels of review.  (Id. at 94-95, 113-14.)  Defendant McClure has presented evidence
    that plaintiff was, at least initially, assessed a ninety day loss of good time credit on the
15  disciplinary conviction.  (Doc. No. 81-4 at 16.)

16      [2]  Plaintiff alleges that x-rays taken on June 2, 2009 showed that his arm/wrist was
    fractured and that he had suffered "soft tissue damage."  However, contrary to those allegations,
17  a radiology report dated June 1, 2009 and attached to plaintiff's complaint as an exhibit indicates:
    "No acute fracture is identified.  Deformity is seen of the distal radius and ulna, particularly the
18  ulnar styloid.  This is consistent with an old fracture.  Intercarpal relationships appear normal.
    Osseous structures show no evidence for acute fracture or erosive disease."  (Doc. No. 1 at 72.)
19
        [3]  An MRI report dated June 26, 2009 and also attached to plaintiff's complaint as an
20  exhibit states the following findings:

21          No abnormal signal intensity within the carpal bones or
            metacarpals to suggest fracture or infection.  Triangular
22          fibrocartilage compex (TFCC) normal in appearance.  Intercarpal
            ligaments intact.  No wrist effusion.  Carpal tunnel and median
23          nerve unremarkable.  [¶] Marker placed at the site of patients's
            maximal pain, which overlies the dorsal aspect of the thumb.
24          There is underlying soft tissue edema at this location.  Edema is
            also noted within the extensor digitorum tendon sheath.  No tendon
25          disruption noted.

26  (Doc. No. 1 at 41.)

**MOTION FOR SUMMARY JUDGMENT**

I. <u>Defendant McClure's Motion</u>

   In support of his motion for summary judgment, defendant McClure has placed into evidence copies of the following documents from plaintiff's C-File, sworn to be true and correct by Erika Hrbacek, Management Services Technician at Mule Creek State Prison: (1) CDCR 837-C (Incident Report) authored by F. Montes; (2) CDCR 837-C (Incident Report) authored by A. Whitfield; (3) CDCR 837-C (Incident Report) authored by A. Thomas; (4) CDCR 7219 (Medical Report of Injury or Unusual Occurrence) dated April 22, 2009; and (5) CDCR 115 (Rules Violation Report) Log No. S2-09-04-03 dated April 22, 2009. (Doc. No. 81-4.) Defendant McClure has also submitted his own declaration, signed under penalty of perjury, giving his version of the events at issue. (Doc. No. 81-5.) Finally, defendant McClure offers excerpts from plaintiff's deposition. (Doc. Nos. 81-6, - 81-7.)

   According to defendant McClure, plaintiff refused to cooperate with the removal of his handcuffs on April 22, 2009 by jerking his arm away from him. (Doc. No. 81-5 at 2.) Defendant McClure responded to plaintiff's action by holding the empty left cuff tightly so that plaintiff could not pull away. (<u>Id.</u>) Plaintiff then turned to his right, faced McClure, and used his left hand to grab the chain of the handcuffs, attempting to pull them inside the cell. (<u>Id.</u>) According to defendant McClure, he could not let go of the handcuffs because that would have allowed plaintiff to use them as a dangerous weapon. (<u>Id.</u>) Moreover, the act of re-acquiring the handcuffs from plaintiff would have necessitated a calculated use of force in the form of a cell extraction. (<u>Id.</u>) After defendant McClure gave plaintiff several commands, plaintiff eventually let go of the handcuffs and stopped pulling, but still refused to turn around and place his back to the cell door. (<u>Id.</u>)

   Officer Montes then approached and asked if he could assist by attempting to remove the handcuffs from plaintiff's other wrist. (<u>Id.</u>) After Montes removed the handcuffs, Montes asked plaintiff if he was alright and plaintiff said that he was. (<u>Id.</u>) Plaintiff did not

1    express a need for medical care at that time and the relatively minor nature of the incident did not

2    indicate to defendant McClure that medical care was necessary.  (Id.)  Defendant McClure left

3    the area and did not have further interactions with plaintiff that day.  (Id.)  Due to the minor

4    nature of the incident, defendant McClure did not believe it was immediately necessary to

5    prepare a report about it.  (Id.)  His first opportunity to prepare the report charging plaintiff with

6    the rule violation of resisting staff resulting in the use of force came on April 30, 2009.  (Id. at 2-

7    3.)  Although defendant McClure is now aware that plaintiff submitted an inmate appeal

8    regarding the April 22, 2009 incident, he was not aware of that inmate appeal when he prepared

9    the rule violation report charging plaintiff on April 30, 2009.  (Id. at 3.)

10            Defendant McClure seeks summary judgment in his favor on all of plaintiff's

11    claims, asserting there is no evidence that he subjected plaintiff to excessive force or that he was

12    deliberately indifferent to plaintiff's serious medical needs in violation of the Eighth

13    Amendment.  (Doc. No. 81-1 at 5-9.)  He also argues that there is no evidence before the court

14    that he retaliated against plaintiff for exercising a protected right in violation of the First

15    Amendment.  (Id. at 9-11.)  Defendant McClure further contends that plaintiff's excessive force

16    and retaliation claims are barred by the decision in Heck v. Humphrey, 512 U.S. 477 (1994),

17    because a judgment in favor of plaintiff on those claims would necessarily imply the invalidity of

18    plaintiff's prison disciplinary conviction stemming from this incident.  (Id. at 12-13.)  In the

19    alternative, defendant McClure claims he is entitled to summary judgment in his favor on

20    qualified immunity grounds.  (Id. at 13-14.)

21    II.  Plaintiff's Opposition

22            In opposition to the pending motion for summary judgment, plaintiff disputes

23    various facts which defendant McClure claims to be undisputed and reiterates a description of the

24    events on April 22, 2009, that is consistent with the allegations as they appear in plaintiff's

25    verified complaint.  (Doc. No. 91 at 1-6.)  In support of the facts referenced in his opposition,

26    plaintiff has submitted a declaration that he signed, though not under penalty of perjury.  (Doc.

1  90 at 1-2.)  Plaintiff also cites various portions of the transcript of his deposition taken on

2  November 18, 2011.  (Id.)

3         Plaintiff argues against defendant McClure's assertion that letting go of the

4  handcuff he held was not an available option because of the possibility that the handcuffs could

5  be used by plaintiff as a weapon.  (Doc. No. 91 at 4.)  Plaintiff also contests defendant McClure's

6  assertion that the act of re-acquiring the handcuffs, if surrendered, would have necessitated a cell

7  extraction.  (Id.)  In this regard, plaintiff states that he has never seen handcuffs used as a

8  weapon, and that it is clear that no cell extraction would have been necessary since it is

9  undisputed that he complied when officer Montes removed the handcuff from his wrist.  (Id.)

10        In response to defendant McClure's assertions that plaintiff did not express a need

11  for medical care at the time and that the relatively minor nature of the incident did not indicate

12  that medical care was necessary, plaintiff contends that he did not have time to say anything

13  because defendant McClure "took off."  (Doc. No. 91 at 5.)  Plaintiff further argues that the

14  incident was clearly not minor in nature since a wrist fracture became apparent in the third x-ray

15  taken[3] and he was subsequently put into a full cast.  (Doc. No. 91 at 6.)

16  III.  Defendant McClure's Reply

17        In reply, defendant McClure reiterates his arguments in support of summary

18  judgment in his favor, including those that plaintiff's claims of excessive force and retaliation are

19  Heck-barred and that, in any event, he is entitled to qualified immunity.  (Doc. No. 93 at 5.)

20  Defendant McClure also objects to plaintiff's evidence to the extent that plaintiff's declaration

21  was not signed under penalty of perjury.  (Id. at 3.; Doc. No. 93-1.)

22        As to plaintiff's excessive us of force claim, defendant McClure argues that the

23  mere fact that plaintiff has never seen handcuffs used as a weapon is irrelevant.  (Doc. No. 93 at

24

25        [3] The court need not accept plaintiff's bare, conclusory allegation that his wrist was
fractured as true since that allegation is uncorroborated by any evidence before the court and the
allegation is squarely contradicted by an exhibit attached to plaintiff's own complaint, as set forth
26  in footnote 2, above.

1  2.)  He also argues that he had no way of knowing at the time what possible action plaintiff might

2  take if he was successful in wrestling away the handcuffs.  Defendant McClure asserts that

3  although plaintiff contends in his opposition that he did not jerk his right arm away from

4  McClure and did not grab the chain of the handcuff to try to pull it into his cell, plaintiff testified

5  at his deposition that he did, in fact, grab the handcuffs with his loose hand as McClure held onto

6  them.[4]  (Id. at 3; see also Doc. No. 93-2 at 9.)

7          As to plaintiff's deliberate indifference claim, defendant McClure argues that even

8  if plaintiff had a serious medical need at the time of this incident, there is no evidence indicating

9  that McClure was made aware of it.  (Doc. No. 93 at 3.)   Defendant McClure points out that

10  plaintiff has since admitted that he did not have time to say anything to him about medical

11  treatment.  (Id.)  Defendant McClure further argues that plaintiff clearly did not have a desire to

12  receive medical treatment at the time of the incident as evidenced by the undisputed fact that

13  plaintiff indicated to correctional officer Montes that he was "OK."  (Doc. No. 93 at 4.)

14          As to plaintiff's retaliation claim, defendant McClure notes it is undisputed that

15  plaintiff does not know whether defendant McClure knew of plaintiff's inmate appeal at the time

16

17          [4] Plaintiff addressed this particular point of contention in his deposition testimony as
   follows:

18

19          A.  I believe I grabbed the handcuff where my hand was at.  I
             believe that he had the hold of the chain and another handcuff.

20          Q.  So you grabbed what I guess was the actual ring that goes
             around your wrist, you grabbed a hold of that?

21

22          A.  I grabbed my wrist because I ways [sic] trying to stop it from
             hitting the door.

23          Q.  So – okay.  You grabbed your wrist, but you didn't grab the
             handcuffs?

24

25          A.  I believe like my thumb or forefinger was on there, but *I didn't
             have actual hold of the handcuff.*

26  (Nov. 18, 2011 Deposition of James Guerrero (Doc. No. 81-7) at pp. 106-07 (emphasis added)).

1  he authored the rule violation report charging plaintiff with resisting.  (Doc. No. 93 at 5.)

2  **APPLICABLE LEGAL STANDARDS**

3  I.  <u>Summary Judgment Standards under Rule 56</u>

4             Summary judgment is appropriate when there exists "no genuine issue as to any

5  material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

6  P. 56(c).  Under summary judgment practice, the moving party

7                always bears the initial responsibility of informing the district court
               of the basis for its motion, and identifying those portions of "the
8              pleadings, depositions, answers to interrogatories, and admissions
               on file, together with the affidavits, if any," which it believes
9              demonstrate the absence of a genuine issue of material fact.

10 <u>Celotex Corp. v. Caltrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here

11 the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

12 judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

13 to interrogatories, and admissions on file.'"  <u>Id.</u>  Summary judgment should be entered, after

14 adequate time for discovery and upon motion, against a party who fails to make a showing

15 sufficient to establish the existence of an element essential to that party's case, and on which that

16 party will bear the burden of proof at trial.  <u>See Id.</u> at 322.  "[A] complete failure of proof

17 concerning an essential element of the nonmoving party's case necessarily renders all other facts

18 immaterial."  <u>Id.</u>  In such a circumstance, summary judgment should be granted, "so long as

19 whatever is before the district court demonstrates that the standard for entry of summary

20 judgment, as set forth in Rule 56(c), is satisfied."  <u>Id.</u> at 323.

21             If the moving party meets its initial responsibility, the burden then shifts to the

22 opposing party to establish that a genuine issue as to any material fact actually does exist.  <u>See</u>

23 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  In attempting to

24 establish the existence of this factual dispute, the opposing party may not rely upon the

25 allegations or denials of its pleadings but is required to tender evidence of specific facts in the

26 form of affidavits or admissible discovery material, in support of its contention that the dispute

8

1   exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

2   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

3   suit under the governing law (see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

4   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987)), and

5   that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

6   for the non-moving party (see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.

7   1987).

8           In the endeavor to establish the existence of a factual dispute, the opposing party

9   need not establish a material issue of fact conclusively in its favor; it is sufficient that "the

10  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

11  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

12  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

13  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

14  committee's note on 1963 amendments).

15          In resolving a summary judgment motion, the court examines the pleadings,

16  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

17  any.  Fed. R. Vic. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

18  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

19  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

20  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

21  produce a factual predicate from which the inference may be drawn.  See Richards v. Neilsen

22  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

23  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

24  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

25  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

26  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (internal citation omitted).  Thus, a

9

1  scintilla of evidence or evidence that is merely colorable or not significantly probative does not

2  present a genuine issue of material fact precluding summary judgment.  Addisu v. Fred Meyer,

3  Inc., 198 F.3d 1130, 1134 (9th Cir. 2000); Summers v. A. Teichert & Son, Inc., 127 F.3d 1150,

4  1152 (9th Cir. 1997).[5]

5          On March 9, 2010 (Doc. No. 11), the court advised plaintiff of the requirements

6  for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  On August

7  10, 2012, contemporaneously with the filing of defendant McClure's motion for summary

8  judgment, and pursuant to the Ninth Circuit's decision in Woods v. Carey, 684 F.3d 934 (9th Cir.

9  2012), plaintiff was again advised of the requirements for opposing such a motion pursuant to

10  Rule 56 of the Federal Rules of Civil Procedure.  (Doc. No. 81-1.)  See Rand v. Rowland, 154

11  F.3d 952, 957 (9th Cir. 1998) (en banc).

12  II.  42 U.S.C. § 1983

13          The Civil Rights Act under which this action was filed provides as follows:

14          Every person who, under color of [state law] ... subjects, or causes
            to be subjected, any citizen of the United States ... to the
15          deprivation of any rights, privileges, or immunities secured by the
            Constitution... shall be liable to the party injured in an action at
16          law, suit in equity, or other proper proceeding for redress.

17  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

18  actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See

19  generally Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); see also Rizzo v. Goode, 423

20  U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within

21  the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or

22  omits to perform an act which he is legally required to do that causes the deprivation of which

23

24      [5]  The court "is not required to comb through the record to find some reason to deny a
        motion for summary judgment."  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026,
        1029 (9th Cir. 2001).  Instead the "party opposing summary judgment must direct the Court's
25      attention to specific triable facts."  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th
        Cir. 2003).  Statements in a brief, unsupported by evidence in the record, cannot be used to create
26      an issue of fact.  Barnes v. Independent Auto Dealers, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

complaint is made." <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).

**DISCUSSION**

I. <u>Defendant McClure's Objections to Plaintiff's Evidence</u>

As noted above, plaintiff's declaration submitted in support of his opposition to defendant McClure's motion for summary judgment was not signed under penalty of perjury. (<u>See</u> Doc. No. 81-1) (advising plaintiff that "[u]nsigned affidavits or declarations will be stricken, and affidavits or declarations not signed under penalty of perjury have no evidentiary value."). However, almost all of the facts related in plaintiff's unsworn declaration are also presented in his verified complaint, signed by plaintiff under penalty of perjury. The facts alleged in plaintiff's verified complaint, therefore, have the same effect as averments made in an affidavit signed under penalty of perjury, in refuting defendant McClure's evidence in support of his summary judgment motion to the extent they are based on plaintiff's personal knowledge and are otherwise admissible. <u>See</u> <u>Schroeder v. McDonald</u>, 55 F.3d 454, 460 (9th Cir. 1995); <u>see also</u> <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004) (court may consider as evidence in opposition to a motion for summary judgment a pro se plaintiff's contentions when they are based on personal knowledge and set forth facts that would be admissible in evidence).[6]

II. <u>Excessive Force Claim</u>

When prison officials are accused of using excessive force on an inmate in violation of the Eighth Amendment, the relevant inquiry is whether the force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm. <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986); <u>Hudson v. McMillian</u>, 503 U.S. 1, 6-7 (1992). "Force does not amount to a constitutional violation . . . if it

---

[6] The court notes that plaintiff also supported portions of his opposition to the pending motion for summary judgment with citations to the transcript of his sworn deposition. The court also notes, however, that despite defendant's assertion that he failed to submit his declaration under penalty of perjury, plaintiff has not chosen to file a signed version of his declaration that was sworn to under penalty of perjury.

1   is applied in a good faith effort to restore discipline and order and not 'maliciously and

2   sadistically for the very purpose of causing harm.'" Clemente v. Gomez, 298 F.3d 898, 903 (9th

3   Cir. 2002) (quoting Whitley, 475 U.S. at 320-21). See also Jordan v. Gardner, 986 F.2d 1521,

4   1528 (9th Cir. 1993) (en banc).

5          To succeed on an excessive force claim, plaintiff must establish that defendant

6   unnecessarily and wantonly inflicted pain. See Whitley, 475 U.S. at 320; see also Jeffers v.

7   Gomez, 267 F.3d 895, 900 (9th Cir. 2001). Under Whitley, the relevant factors in determining

8   whether a use of force violated the Eighth Amendment are: (1) the need for use of force; (2) the

9   relationship between the need for force and the amount used; (3) the extent of injury inflicted; (4)

10  the extent of the threat the officers reasonably perceived the plaintiff to pose to staff and inmate

11  safety; (5) any efforts made to temper the severity of the forceful response. Id. at 321. See also

12  Hudson, 503 U.S. at 7. "[T]he absence of an emergency may be probative of whether the force

13  was indeed inflicted maliciously or sadistically." Jordan, 986 F.2d at 1528, n. 7. The Supreme

14  Court has reiterated that the Eighth Amendment may be violated by the use of excessive force

15  against a prison inmate "'[even] when the inmate does not suffer serious injury.'" Wilkins v.

16  Gaddy, 559 U.S. 34, ___, 130 S. Ct. 1175, 1176 (2010) (quoting Hudson, 503 U.S. at 4). While

17  the extent of an inmate's injury is relevant to the Eighth Amendment inquiry, "[i]njury and force

18  . . . are only imperfectly correlated, and it is the latter that ultimately counts." Wilkins, 130 S. Ct.

19  at 1178. At the same time:

20          [N]ot "every malevolent touch by a prison guard gives rise to a
            federal cause of action." [Hudson,]503 U.S. at 9, 112 S. Ct. 995.
21          "The Eighth Amendment's prohibition of 'cruel and unusual'
            punishments necessarily excludes from constitutional recognition
22          de minimis uses of physical force, provided that the use of force is
            not of a sort repugnant to the conscience of mankind." Ibid. (some
23          internal quotation marks omitted). An inmate who complains of a
            "push or shove" that causes no discernible injury almost certainly
24          fails to state a valid excessive force claim. Ibid. (quoting Johnson
            v. Glick, 481 F.2d 1028, 1033 (2d Cir.1973)).

25

26  Wilkins, 130 S. Ct. at 1178. See also Hudson, 503 U.S. at 7-9; Martinez v. Stanford, 323 F.3d

1   1178, 1184 (9th Cir. 2003).

2       A.   <u>Application of Heck v. Humphrey</u>

3          As noted above, defendant McClure contends that a judgment in plaintiff's favor

4   on his excessive use of force claim would necessarily imply the invalidity of plaintiff's prison

5   disciplinary conviction stemming from this incident, in violation of the rule announced in <u>Heck</u>

6   <u>v. Humphrey</u>, 512 U.S. 477 (1994).  In <u>Heck</u>, the Supreme Court held:

7           [I]n order to recover damages for allegedly unconstitutional
    conviction or imprisonment, or for other harm caused by actions

8           whose unlawfulness would render a conviction or sentence invalid,
    a § 1986 plaintiff must prove that the conviction or sentence has

9           been reversed on direct appeal, expunged by executive order,
    declared invalid by a state tribunal authorized to make such a

10          determination, or called into question by a federal court's issuance
    of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages

11          bearing that relationship to a conviction or sentence that has *not*
    been so invalidated is not cognizable under § 1983.  Thus, when a

12          state prisoner seeks damages in a § 1983 suit, the district court
    must consider whether a judgment in favor of the plaintiff would

13          necessarily imply the invalidity of his conviction or sentence; if it
    would, the complaint must be dismissed unless the plaintiff can

14          demonstrate that the conviction or sentence has already been
    invalidated.  But if the district court determines that the plaintiff's

15          action, even if successful, will *not* demonstrate the invalidity of
    any outstanding criminal judgment against the plaintiff, the action

16          should be allowed to proceed, in the absence of some other bar to
    the suit.

17

18  <u>Heck</u>, 512 U.S. at 486-87 (footnotes omitted).  The holding in <u>Heck</u> applies in the context of

19  prison disciplinary convictions where the loss of good time credits is assessed.  <u>See</u> <u>Edwards v.</u>

20  <u>Balisok</u>, 520 U.S. 641, 648 (1997) (claims for declaratory relief and money damages challenging

21  prison disciplinary hearing procedures were <u>Heck</u>-barred because the nature of the allegations, if

22  proven, would necessarily imply the invalidity of the result of the prison disciplinary hearing);

23  <u>see also</u> <u>Smithart v. Towery</u>, 79 F.3d 951, 952 (9th Cir. 1996) ("<u>Heck</u>, in other words, says that if

24  a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with

25  the unlawful behavior for which section 1983 damages are sought, the 1983 action must be

26  dismissed.").

1        It is not the case, however, that if a prisoner resists a correctional officer the

2   officer may use whatever amount of force he or she wishes to subdue the individual.  See

3   Whitley, 475 U.S. at 321.  Accordingly, an Eighth Amendment excessive force claim by a

4   prisoner against a correctional officer will often not be fundamentally inconsistent with the

5   validity of a prison  disciplinary conviction for resisting staff resulting from the same incident.

6   See e.g., Hooper v. County of San Diego, 629 F.3d 1127, 1133 (9th Cir. 2011) (excessive force

7   claim not Heck-barred because "[a] holding in Hooper's § 1983 case that the use of the dog was

8   excessive force would not 'negate the lawfulness of the initial arrest attempt, or negate the

9   unlawfulness of Hooper's attempt to resist it when she jerked her hand away from Deputy

10  Terrell.'") (internal brackets omitted); Smith v. City of Hemet, 394 F.3d 689, 696 (9th Cir. 2005)

11  ("Under Heck, Smith would be allowed to bring a § 1983 action, however, if the use of excessive

12  force occurred subsequent to the conduct on which his conviction was based."); Smithart, 79

13  F.3d at 952-53 (reversing the district court's dismissal of an excessive force action brought by an

14  arrestee under the Fourth Amendment, because a successful result for the plaintiff would not

15  necessarily imply the invalidity of the plaintiff's arrest or conviction for assault with a deadly

16  weapon where the plaintiff maintained that the defendant arresting officers, used force far greater

17  than required for his arrest and out of proportion to the threat which he posed); see also Huey v.

18  Stine, 230 F.3d 226, 230 (6th Cir. 2000) ("In general, the federal courts hold that Eighth

19  Amendment claims do not run afoul of Heck because the question of the degree of force used by

20  a . . . correctional officer is analytically distinct from the question whether the plaintiff violated

21  the law."), abrogated on other grounds by Muhammad v. Close, 540 U.S. 749 (2000); Shelton v.

22  Chorley, No. 1:07-CV-560-MHM, 2011 WL 1253655, at *4 (E.D. Cal. Mar. 31, 2011) (finding

23  that the prisoner plaintiff's excessive use of force claim against correctional officer was not

24  Heck-barred despite plaintiff's prison disciplinary conviction for battery on a peace officer

25  /////

26  /////

14

1   because "it is possible that Plaintiff attempted to batter Defendant *and* that Defendant used

2   excessive force in subduing Plaintiff.")[7]

3            In this case, the factual context in which the force was used is disputed.  For

4   purposes of the <u>Heck</u> analysis, it is theoretically possible that plaintiff could prevail on his

5   excessive force claim without necessarily implying the invalidity of his prison disciplinary

6   conviction by proving that:  (1) defendant McClure responded to plaintiff's resistance with an

7   unjustified and excessive amount of force; or (2) defendant McClure used excessive force *before*

8   or *after*, instead of in response to, plaintiff's resistance.  In other words, while plaintiff's version

9   of the events contradicts the disciplinary hearing officer's finding that plaintiff was guilty of

10  resisting staff resulting in the use of force, success on his excessive use of force claim does not

11  *necessarily* exclude the possibility that he was guilty of that prison rule violation.[8]  Accordingly,

12  the court concludes that plaintiff's excessive force claim is not <u>Heck</u>-barred.

13  ──────────────

14       [7] As discussed above, defendant McClure's alleged use of force consisted of "yank[ing] and slamm[ing]" plaintiff's right wrist into the food port/cell door.  (<u>See</u> Doc. No. 1 at 6.)
15  Whether defendant McClure's use of force in this case occurred during or after plaintiff's resistance is disputed, in part because plaintiff maintains that he did not resist at all.  (Doc. No. 1
16  at 6; Doc. No. 91 at 3 (citing Depo. (Doc. No. 81-7) at 106)).  Specifically, plaintiff has tendered some evidence he did not jerk his arm away from McClure.  (Doc. No. 91 at 3 (citing Depo.
17  (Doc. No. 81-7) at 106.)).  Plaintiff's version of the events is indeed inconsistent with his disciplinary conviction in this regard, in that he was found guilty of resisting staff resulting in the
18  use of force.  The question remains, however, whether plaintiff could prevail on his excessive force claim based on a theory that does not depend on a finding that he did not resist.  <u>See</u>
19  <u>Cunningham</u>, 312 F.3d 1152, 1154 (9th Cir. 2002) ("In evaluating whether claims are barred by <u>Heck</u>, an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an
20  element of the offense of which he has been convicted.'").

21       [8] District courts in California have determined on numerous occasions that Eighth Amendment claims under circumstances similar to those presented here are not <u>Heck</u>-barred.
22  <u>See</u>, <u>e.g.</u>, <u>El-Shaddai v. Wheeler</u>, No. CIV S-06-1898 KJM EFB P, 2011 WL 1332044 at *5 (E.D. Cal. Apr. 5, 2011); <u>Gipbsin v. Kernan</u>, No. CIV S-07-0157 MCE EFB P, 2011 WL 533701
23  at *3 (E.D. Cal. Feb. 11, 2011); <u>Meadows v. Porter</u>, No. S-07-0475 HDM RAM, 2009 WL 3233902 at *1 (E.D. Cal. Oct. 2, 2009); <u>Hackworth v. Rangel</u>, No. 1:06CV0850 AWI YNP SMS
24  (PC), 2009 WL 3211003, at *3-4 (E.D. Cal. Sept. 30, 2009); <u>Candler v. Woodford</u>, No. C 04-5453 MMC (PR) 2007 WL 3232435 at *1 (N.D. Cal. Nov. 1, 2007).  One difference between
25  these cited decisions and the case before this court lies in the facts that this case involves allegations of an arguably lesser degree of force than was alleged in the cited cases.  However,
26  the court finds that this factor, alone, cannot be relied upon to distinguish the present case.

    B.  Examination of the Evidence

        To succeed on his excessive force claim, plaintiff will need to prove that defendant McClure unnecessarily and wantonly inflicted pain on him during the removal of the handcuffs.  See Whitley, 475 U.S. at 320.  Again, the relevant factors include:  (1) the need for force, (2) the relationship between the need for force and the amount of force used, (3) the extent of the injury inflicted, (4) the extent of the threat the officers reasonably perceived the plaintiff posed to staff and inmates, and (5) any efforts to temper the severity of a forceful response.  Id. at 321.

        The undersigned agrees that the undisputed facts before the court in this case foreclose the possibility of plaintiff prevailing on his excessive use of force claim.  Although plaintiff has testified that he never jerked his arm away from defendant McClure (Doc. No. 91 at 3 (citing Depo. at 106.)), the undisputed facts demonstrate that plaintiff did in fact resist at some point during defendant McClure's attempt to remove the handcuffs, resulting in a struggle of sorts between plaintiff and McClure.  In this regard, the evidence before the court on summary judgment establishes that plaintiff used his uncuffed hand to either grab the handcuff itself or his own hand that was still in the wrist cuff.  (Doc. No. 81-5 at 2; Depo. at 107.)  Thus, there was a legitimate need for the application of some force by the defendant in response.  (Doc. No. 81-5 at 2.)  Likewise, based on this evidence, defendant McClure reasonably perceived that plaintiff posed a potential threat if he successfully obtained control of the handcuffs.  Under either party's version of facts, the relationship between the need for force and the amount of force used was reasonable, whether defendant McClure merely "h[eld] tight to the empty left cuff so that [plaintiff] could not pull away" (Doc. No. 81-5 at 2), or "yanked and slammed" plaintiff's right wrist into the food port/cell door (Doc. No. 1 at 6).  Moreover, there is no evidence before the court suggesting that defendant McClure had an opportunity to temper the severity of his response, which was an immediate one.  Rather, it is undisputed that these events occurred quickly and the overall incident was very brief in time.

1   As to the extent of the injury suffered, at plaintiff's medical evaluation on the day

2   of the incident he reported pain in his wrist area.  (Doc. No. 81-4 at 11.)  In addition, some

3   swelling and "reddened lines" were observed on his wrist.  (Doc. No. 81-4 at 11.)  Plaintiff states

4   in his unsworn declaration that he was placed into a full cast, that an x-ray showed a fractured

5   wrist, and that a pin was placed into his wrist.  (Doc. No. 90 at 2.)  However, plaintiff has

6   presented no evidence to support these conclusory allegations.  As previously noted, plaintiff's

7   allegation that an x-ray showed that he had suffered a fractured wrist is in fact refuted by an

8   exhibit attached by plaintiff to his own complaint.  (See Doc. No. 1 at 72.)  In addition, there is

9   no evidence before the court indicating that plaintiff's alleged subsequent diagnoses of carpal-

10  tunnel syndrome and "radial neurotheropity," which are themselves unsupported by any evidence

11  in the record, were in any way related to the April 22, 2009 incident.  Thus, the only evidence

12  before the court on summary judgment indicates that plaintiff suffered very minor injuries (some

13  swelling and redness) resulting from the defendant McClure's reasonable use of some force in

14  response to plaintiff's some resistance.

15   There may be some factual dispute between the parties as to when plaintiff's

16  resistance began and its degree.  However, not every factual dispute will defeat a motion for

17  summary judgment.  As the Supreme Court has made clear that:

18      When opposing parties tell two different stories, one of which is
        blatantly contradicted by the record, so that no reasonable jury
19      could believe it, a court should not adopt that version of the facts
        for purposes of ruling on a motion for summary judgment.
20

21  Scott v. Harris, 550 U.S. 372, 380 (2007).  See also Celotex Corp., 477 U.S. at 322 (summary

22  judgment should be entered, after adequate time for discovery and upon motion, against a party

23  who fails to make a showing sufficient to establish the existence of an element essential to that

24  party's case, and on which that party will bear the burden of proof at trial); Addisu, 198 F.3d at

25  1134 ("A scintilla of evidence or evidence that is merely colorable . . . does not present a genuine

26  issue of material fact" but rather there "must be enough doubt for a 'reasonable trier of fact' to

1    find for plaintiffs in order to defeat the summary judgment motion."); Hansen v. United States, 7

2    F.3d 137, 138 (9th Cir. 1993) ("When the non-moving party relies on its own affidavits to

3    oppose summary judgment, it cannot rely on conclusory allegations unsupported by factual data

4    to create an issue of material fact.").

5                On the evidence presented in connection with this summary judgment motion, the

6    court concludes that a reasonable jury could not return a verdict for plaintiff on his excessive use

7    of force claim.  Therefore no triable issue of disputed material fact exists and summary judgment

8    should be entered in favor of defendant McClure on plaintiff's excessive use of force claim.  See

9    Shelton, 2011 WL 1253655, at *5 (granting summary judgment in favor of the defendant

10   correctional officer on an excessive use of force claim, concluding that "[t]he foregoing facts do

11   not permit a finding that Defendant used excessive force against Plaintiff.  To the contrary, they

12   strongly suggest that the force applied by Defendant was reasonable under the circumstances and

13   in furtherance of the legitimate penological interest of maintaining order and safety.")[9]

14   III.  Retaliation Claim

15               Retaliation by a state actor for the exercise of a constitutional right is actionable

16   under 42 U.S.C. § 1983 even if the act, when taken for different reasons, would have been

17   proper.  Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977).  Although

18

19       [9]  The court is certainly mindful that the Ninth Circuit has cautioned lower courts to take care in deciding excessive force cases on summary judgment.  See Santos v. Gates, 287 F. 3d 846, 853 (9th Cir. 2002) ("Because [the excessive force inquiry] nearly always requires a jury to

20   sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment or judgment as a matter of law in excessive force cases

21   should be granted sparingly."); see also Smith v. City of Hemet, 394 F.3d 689, 701 (9th Cir. 2005); Lolli v. County of Orange, 351 F.3d 410, 415-16 (9th Cir. 2003).  However, the

22   undersigned concludes that this is one of those rare cases given plaintiff's failure of proof.  Here, at the summary judgment stage of the litigation plaintiff has failed to come forward with any

23   evidence in support of his excessive force claim.  Moreover, plaintiff's claims of serious injury stemming from the incident are belied by his own exhibits to his complaint.  Rather, the evidence

24   submitted on summary judgment reflects a mere tug-of-war, if you will, between plaintiff and the defendant correctional officer over handcuffs, strongly suggesting de minimis use of force with a

25   resulting de minimis injury.  See Wilkins, 130 S. Ct. at 1178 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive

26   force claim.")

1  retaliation is not expressly referred to in the Constitution, it is actionable because retaliatory

2  actions may tend to chill the exercise of constitutional rights.  Perry v. Sindermann, 408 U.S. 593

3  (1972).

4          "Within the prison context, a viable claim of First Amendment retaliation entails

5  five basic elements:  (1) An assertion that a state actor took some adverse action against an

6  inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

7  inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

8  legitimate correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005)

9  (footnote omitted).[10]  To show that the adverse action was taken because of protected conduct, a

10  plaintiff must submit evidence linking the alleged retaliation to the exercise of a constitutional

11  right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  A prisoner must also establish

12  that the protected conduct was a substantial or motivating factor for the alleged retaliatory acts.

13  See Mt. Healthy City Board of Ed., 429 U.S. at 285-86.  However, retaliatory motive may be

14  inferred from the timing and nature of the alleged retaliatory activities.  See Soranno's Gasco,

15  Inc. v. Morgan, 874 F.2d 1310, 1314-16 (9th Cir. 1989).  Nonetheless, a mere allegation of a

16  retaliatory motive is insufficient to defeat a motion for summary judgment.  See Barnett v.

17  Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

18          The Ninth Circuit has found that preserving institutional order, discipline and

19  security are legitimate penological goals that, if they provide the motivation for an official act

20  taken, will defeat a claim of retaliation.  Barnett, 31 F.3d at 816; Rizzo v. Dawson, 778 F.2d 527,

21  532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in

22

23          [10]  For purposes of evaluating a retaliation claim, an adverse action is action that "would
24  chill a person of ordinary firmness" from engaging in that activity.  Pinard v. Clatskanie School
    Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v. Lee, 227 F.3d 1214, 1228 (9th Cir. 2000).
25  Moreover, prisoners have a constitutional right to file prison grievances and pursue civil rights
    litigation in the courts.  See Rhodes, 408 F.3d at 567.  Prison officials may not retaliate against
26  prisoners for exercising these rights.  See Id. at 568; see also  Hines v. Gomez, 108 F.3d 265,
    267 (9th Cir. 1997); Bradley v. Hall, 64 F.2d 1276, 1279 (9th Cir. 1995).

terms of the legitimate policies and goals of the correctional institution in the preservation of
internal order and discipline, maintenance of institutional security, and rehabilitation of
prisoners.")  The burden is on plaintiff to demonstrate that legitimate correctional purposes did
not motivate the actions by prison officials about which he complains.  Pratt, 65 F.3d at 808.  The
Ninth Circuit has also held that, "prison officials may not defeat a retaliation claim on summary
judgment simply by articulating a general justification for a neutral process, when there is a
genuine issue of material fact as to whether the action was taken in retaliation[.]"  Bruce v. Ylst,
351 F.3d 1283, 1289 (9th Cir. 2003).

At the outset, defendant McClure argues that plaintiff's retaliation claim is Heck-
barred.  Again, the relevant question in this regard is whether a finding for plaintiff on his
retaliation claim would necessarily imply the invalidity of his disciplinary conviction and the
accompanying loss of time credits.  Heck, 512 U.S. at 486-87.  The Ninth Circuit has not
addressed this complex issue in the context of a retaliation claim.  Other courts have, however,
concluded that a retaliation claim such as that presented here by plaintiff is not subject to a Heck
bar.  See Lockett v. Suardini, 526 F.3d 866, 873 (6th Cir. 2008) ("[W]e conclude that Lockett's
. . . retaliation claim is analytically distinct from whether he was guilty the assault [on
correctional officers] and therefore does not implicate Heck."); Woods v. Smith, 60 F.3d 1161,
1165 (5th Cir. 1995) (Declining to impose a Heck bar to a claim of a retaliatory prison
disciplinary charge because, "[a]n action motivated by retaliation for the exercise of a
constitutionally protected right is actionable, even if the act, when taken for different reason,
might have been legitimate."), cert. denied, 516 U.S. 1084 (1996); but see Sheldon v. Hundley,
83 F.3d 231, 234 (8th Cir. 1996) (holding that the plaintiff's First Amendment free speech claim
was "so entangled with the propriety of the disciplinary result, which triggered the loss of good-
time credits, that ruling in [the plaintiff's] favor . . . would necessarily imply the invalidity of the
disciplinary result and the lengthened sentence."); Corrales v. Vega, No. ED CV 12-01876 JVS
(RZ), 2013 WL 327479, at *4 (C.D. Cal. Jan. 28, 2013) ("This Court's decision [applying a Heck

1    bar] is consistent with the handful of unpublished decisions in this District and other California

2    district courts addressing whether the favorable termination rule bars inmates' retaliation claims

3    targeting disciplinary findings that resulted in losses of good-time credits.") (and cases cited

4    therein).  Because the parties have not adequately addressed this issue, nor fully developed the

5    record[11] in this respect, the undersigned declines to resolve the pending motion for summary

6    judgment on Heck-bar grounds.

7             Turning to the merits of the motion for summary judgment on plaintiff's

8    retaliation claim, defendant McClure's argues that the undisputed evidence before the court, in

9    particular his own sworn declaration, establishes that he was unaware that plaintiff had even filed

10   an inmate appeal/staff complaint regarding this incident when McClure filed the prison rules

11   violation report against plaintiff.  (Doc. No. 81-5 at 3.)  Moreover, defendant McClure points out

12   that plaintiff conceded at his deposition that plaintiff had "no idea" whether defendant McClure

13   knew of plaintiff's filing of the inmate appeal/staff complaint when McClure wrote the violation

14   report.  (Doc. No. 81-6 at 12.)  In his opposition to the pending motion for summary judgment,

15   other than to contest whether this incident was of a "minor nature" justifying defendant

16   McClure's delay in filing the violation report, plaintiff does not address his retaliation claim.

17   (See Doc. Nos. 90 & 91.)

18            Thus, it appears that plaintiff's retaliation claim against defendant McClure rests

19   entirely upon the mere fact that McClure issued the rules violation report against plaintiff after

20   plaintiff had filed his inmate appeal/staff complaint about the April 22, 2009 incident.  As noted,

21   defendant McClure has presented evidence that he was unaware of plaintiff's inmate appeal/staff

22

23            [11]  There is an unresolved dispute between the parties as to whether plaintiff actually lost
     ninety days of time credits due to his disciplinary conviction.  Defendant McClure has presented
     evidence indicating that such a forfeiture of credits was originally imposed.  Plaintiff asserts in
24   conclusory fashion that the credit loss was later set aside as untimely imposed.  If the court were
     to resolve the pending summary judgment motion on Heck-bar grounds, the dispute might take
25   on significance since where no good-time credits are called into question a § 1983 action
     challenging a prison disciplinary proceeding may be allowed to proceed.  Muhammad v. Close,
26   540 U.S. 749, 754-55 (2004).

1  complaint when he filed rules violation report.  Plaintiff has conceded under oath that he has no

2  evidence to contest that declaration and is, in fact, unaware of whether defendant McClure knew

3  of the inmate appeal/staff complaint.  Once again, plaintiff's complete failure of proof at this

4  stage of the litigation requires that summary judgment be granted in favor of defendant McClure

5  on this claim as well.

6       A retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*,

7  literally, "after this, therefore because of this."  See Huskey v. City of San Jose, 204 F.3d 893,

8  899 (9th Cir. 2000).  Here, plaintiff's retaliation claim against defendant McClure is supported

9  only by sheer speculation.  Speculation is not probative evidence providing the crucial link

10 between plaintiff's filing of an inmate appeal/staff complaint on the one hand, and defendant

11 McClure's alleged retaliatory rules violation report on the other hand.  This case is

12 distinguishable from cases in which a retaliation claim has survived summary judgment due to

13 the timing of events combined with a defendant's statements to a plaintiff which raised questions

14 regarding the defendant's motives.  See Brodheim v. Cry, 584 F.3d 1262, 1266 & 1270-71(9th

15 Cir. 2009) (summary judgment denied on retaliation claim where evidence revealed that the

16 defendant litigation coordinator had warned plaintiff "to be careful what you write") ; Bruce v.

17 Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003) (summary judgment precluded where, in addition to

18 suspect timing and reliance on stale evidence, plaintiff's declaration stated that defendant

19 correctional officer told plaintiff that due to his complaints and protests the defendant was going

20 to validate him as a gang member ).

21      Here, plaintiff has come forward with no evidence to refute defendant McClure's

22 declaration nor to support his own claim of retaliation against McClure.  For instance, plaintiff

23 has not presented any evidence of defendant McClure having a history of friction or disputes with

24 plaintiff.   Finally, there is no evidence before the court that defendant McClure ever gave

25 plaintiff any indication that he was motivated by plaintiff's filing of an inmate appeal/staff

26 complaint.

1    Accordingly, defendant McClure's motion for summary judgment on plaintiff's

2 First Amendment retaliation claim against him should be granted.

3    IV.  Deliberate Indifference Claim

4    As discussed above in the context of plaintiff's excessive use of force claim, the

5 unnecessary and wanton infliction of pain constitutes cruel and unusual punishment prohibited

6 by the Eighth Amendment.  Whitley, 475 U.S. at 319; Ingraham v. Wright, 430 U.S. 651, 670

7 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  In order to prevail on a cruel and

8 unusual punishment claim, a prisoner must allege and prove that objectively he suffered a

9 sufficiently serious deprivation and that subjectively prison officials acted with deliberate

10 indifference in allowing or causing the deprivation to occur.  Wilson v. Seiter, 501 U.S. 294,

11 298-99 (1991).

12    Where a prisoner's Eighth Amendment claims arise in the medical care context,

13 the prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate

14 indifference to serious medical needs."  Estelle, 429 U.S. at 106.  An Eighth Amendment medical

15 care claim has two elements:  "the seriousness of the prisoner's medical need and the nature of

16 the defendant's response to that need."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.

17 1991), overruled on other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997)

18 (en banc).

19    A medical need is serious "if the failure to treat the prisoner's condition could

20 result in further significant injury or the 'unnecessary and wanton infliction of pain.'"

21 McGuckin, 974 F.2d at 1059 (quoting Estelle, 429 U.S. at 104).  Indications of a serious medical

22 need include "the presence of a medical condition that significantly affects an individual's daily

23 activities."  Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner

24 satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v.

25 Brennan, 511 U.S. 825, 834 (1994).

26 /////

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference. Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).  Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06).  See also Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" Farmer, 511 U.S. at 835 (quoting Whitley, 475 U.S. at 319).

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).  See also McGuckin, 974 F.2d at 1060.

Here, it is undisputed that, following defendant McClure's use of force against plaintiff on April 22, 2009, defendant McClure immediately left the area and did not have any further interactions with plaintiff that day. (Doc. No. 81-5 at 2; Doc. No. 91 at 5-6.)  It is also undisputed that plaintiff did not express a need for medical care to defendant McClure, who did

24

1   not believe that plaintiff needed any medical attention.  (Id.)  There is also no evidence before the

2   court on summary judgment that defendant McClure knew of and disregarded an excessive risk

3   to plaintiff's health and safety.  See Toguchi, 391 F.3d at 1058.  Thus, plaintiff has failed to

4   establish any disputed issue of material fact as to whether defendant McClure was deliberately

5   indifferent to plaintiff's serious medical needs.  Accordingly, defendant McClure is also entitled

6   to summary judgment in his favor on plaintiff's Eighth Amendment deliberate indifference

7   claim.

8                                             CONCLUSION

9               For the reasons stated above, IT IS HEREBY RECOMMENDED that defendant

10  McClure's motion for summary judgment filed August 10, 2012 (Doc. No. 81) be GRANTED.

11              These findings and recommendations are submitted to the United States District

12  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

13  days after being served with these findings and recommendations, any party may file written

14  objections with the court and serve a copy on all parties.  Such a document should be captioned

15  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

16  shall be served and filed within seven days after service of the objections.  The parties are

17  advised that failure to file objections within the specified time may waive the right to appeal the

18  District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

19  DATED: February 26, 2013.

20

21

22                                             DALE A. DROZD
                                               UNITED STATES MAGISTRATE JUDGE
23  DAD: 11
    guer0318.msj.mclure
24

25

26