1
2
3
4
5
6
7
8              IN THE UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JAMES ANTHONY GUERRERO

11          Plaintiff,                    No.  2:10-cv-0318 GEB DAD P

12      vs.

13   S. McCLURE, et al.,

14          Defendants.           FINDINGS AND RECOMMENDATIONS

15

16   _____/

17          Plaintiff, a state prisoner, filed this civil rights action pursuant to 42 U.S.C. §

18   1983 against five named defendants.  A motion for summary judgment filed on behalf of

19   defendants Ferguson, Fecht and Fox is pending before the court.[1]  (Doc. No. 83.)  Plaintiff has

20   filed opposition to the defendants' motion for summary judgment (Doc. Nos. 84, 87-89, 92), and

21   defendants have replied.  (Doc. Nos. 85-86, 97-98.)  For the reasons that follow, it will be

22   recommended that defendants' motion be granted.

23   _____

24          [1] Defendant McClure moved for summary judgment separately on August 10, 2012.
     (Doc. No. 81.)  Findings and recommendations issued with respect to McClure's motion on
25   February 27, 2013.  (Doc. No. 99.)  Defendant Montes was dismissed from this action with
     prejudice pursuant to Fed. R. Civ. P. 41(a)(1)(A)(ii) based on the parties' signed stipulation for
26   voluntary dismissal filed on May 1, 2012.  (Doc. No. 76.)

                                          1

**ALLEGATIONS IN THE COMPLAINT**

Plaintiff's claims stem from an incident on April 22, 2009 involving the use of force by correctional officer McClure against plaintiff.  In his complaint plaintiff alleges as follows.  On that date, McClure escorted plaintiff to his cell, closed the cell door, and opened the "food port" to remove plaintiff's handcuffs. (Doc. No. 1 at 6.)  McClure removed plaintiff's left wrist cuff and, upon having difficulty removing the right wrist cuff, yelled at plaintiff to "turn the fuck around" as he "yanked and slammed" plaintiff's right wrist into the food port/cell door. (Id.)  Plaintiff yelled at McClure to stop pulling on the cuff, however McClure "kept pulling on the cuff . . . ." (Id. at 6.)

Correctional officer Montes approached, asked McClure to let go of plaintiff, and asked plaintiff "what is going on?"  Id. at 6-7.  Montes then removed plaintiff's right wrist cuff and asked "if [plaintiff] was cool." (Id. at 7.)  Both McClure and Montes then left to escort other inmates.  (Id.)

At approximately 9:10 p.m., Montes returned and asked to see plaintiff's wrist and asked if plaintiff could wait until morning to go to "Medical."  (Id.)  Plaintiff told Montes "I will try, but it [is] hurting really bad."  (Id.)  Sometime after 10:00 p.m., plaintiff requested medical attention and was treated for a swollen wrist with an ice pack.  (Id. at 8.)  Plaintiff filed a timely CDCR-602 inmate appeal complaining about McClure's use of force.  (Id.)

On April 23, 2009, Third Watch Ad-Seg Lieutenant Ferguson had plaintiff write an affidavit regarding the April 22, 2009 incident and videotaped plaintiff's statement.  (Id.)  Ferguson stated to plaintiff, "This will go to court."  (Id.)  Although Ferguson helped by videotaping plaintiff's statement and taking the affidavit, he failed to prepare an incident report containing all witness statements and a complete medical report of plaintiff's injuries, which is considered standard procedure.  (Id. at 10.)

On May 2, 2009, plaintiff received a CDCR-115 Rules Violation Report (RVR) authored by McClure on April 30, 2009, charging him with "resisting staff resulting in the use of

force." (Id. at 9.)  On May 5, 2009, plaintiff asked Captain Fox why McClure's RVR had taken

nine days to complete when it should have been completed in twenty-four hours.  (Id. at 11.)  Fox

stated that he was personally handling the investigation, and "there are a lot of irregularities in

this case."  (Id.)  Upon receiving the RVR and an accompanying incident report documenting

McClure's April 22, 2009 use of force, it appeared to plaintiff that Lt. Ferguson was covering up

for McClure's procedural violations.  (Id.)

On May 29, 2009, plaintiff was escorted to a disciplinary hearing on the RVR

authored by McClure.  (Id. at 11.)  Fecht, the officer who presided over the hearing, found

plaintiff guilty of the disciplinary charge of resisting staff resulting in use of force.  (Id. at 13.)

During the hearing, it was apparent to plaintiff that Fecht had already decided plaintiff's guilt,

because Fecht refused some of plaintiff's requests for witnesses, refused to ask McClure all of

the questions plaintiff had submitted, and answered some of McClure's questions for him.  (Id. at

11-13.)  As a result of this disciplinary conviction, the loss of 90 days of good time credit was

assessed.[2]  (Id. at 119.)

Based on the foregoing, plaintiff alleges that defendants Fecht, Ferguson and Fox

conspired to authorize and issue a false 837 Crime/Incident Report to ensure that he was found

guilty of the RVR issued by McClure, in retaliation for plaintiff having submitted an inmate

grievance regarding McClure's use of force.  (Id. at 10.)  Additionally, plaintiff claims that Fecht,

in his capacity as Senior Hearing Officer, and Fox, in his capacity as the Correctional Captain

who reviewed the final outcome of the May 29, 2009 disciplinary hearing, violated his due

process rights in connection with the outcome of the RVR issued by McClure.  (Id. at 12.)

/////

---

[2] Although plaintiff alleged in his complaint that "No time was taken because of the time
limit violations . . . ." (Doc. No. 1 at 13), it is undisputed by the parties for purposes of this
motion for summary judgment that the loss of 90 days good time was assessed (Doc. No. 84 at
6).  This undisputed fact is additionally supported by exhibits that have been submitted by the
parties.  (Doc. No. 1 at 119; Doc. No. 81-4 at 16.).

**MOTION FOR SUMMARY JUDGMENT**

I.  Defendants' Motion

Defendants Fecht, Ferguson and Fox move for summary judgment, asserting that plaintiff has failed to come forward with any evidence supporting his claims that they retaliated against him, violated his due process rights, or otherwise conspired with one another to violate his constitutional rights.  In the alternative,  defendants assert they are entitled to qualified immunity from suit.  (Doc. No. 83-6 at 1.)

Defendants argue that plaintiff's retaliation claim fails because he has not shown that he was engaged in protected conduct prior to the time of the alleged retaliatory acts.  In this regard, defendants contend that plaintiff was issued and received the RVR and accompanying incident report on April 30, 2009, while plaintiff's inmate appeal complaining about the incident with McClure was not received in the Appeals Office until May 5, 2009, and was assigned to Fox for review the following day, on May 6, 2009.  (Id. at 7.)  Defendants further argue that plaintiff cannot show that retaliation was a "substantial" or "motivating" factor behind any of their conduct in relation to the RVR and incident report at issue.

Defendants contend that plaintiff's due process claim fails because he has no protected liberty interest in not receiving a false RVR or in the accompanying loss of good time, due to the fact that he is serving a life sentence which is not affected by the loss of good time.  (Id. at 10-11.)  In the alternative, defendants argue that plaintiff received all the process and procedural protections to which he was entitled.  (Id. at 11.)

To the extent that plaintiff brings a separate claim of an alleged conspiracy to violate his constitutional rights, defendants contend that such a claim also fails because the alleged conspiracy did not deprive plaintiff of any constitutional rights.  (Id. at 18.)

II.  Plaintiff's Opposition

Plaintiff has submitted multiple filings in opposition to the motion for summary judgment filed on behalf of defendants Fecht, Ferguson and Fox.  (See Doc. Nos. 84, 87-88, 89,

92.)  Plaintiff's submissions include a response to each fact claimed to be undisputed by the

defendants and an explanation for those facts he attempts to dispute (Doc. Nos. 84 & 88), his

own set of facts claimed to be undisputed (Doc. Nos. 87 & 92[3]), and an opposition brief

addressing some of defendants' legal arguments.  (Doc. No. 89).  In each of these submissions,

where plaintiff attached his own declaration, he either failed to sign it (Doc. No. 84 at 9) or failed

to sign under penalty of perjury (Doc. Nos. 87 at 4; 88 at 3; 89 at 4; 92 at 4).

III.  Defendants' Reply

   In reply, defendants Fecht, Ferguson and Fox note that plaintiff has failed to

oppose their motion for summary judgment with respect to his conspiracy and retaliation claims.

(Doc. No. 97 at 2.)  Defendants further assert that plaintiff failed to submit any admissible

evidence or legal authority regarding his contentions in support of his due process claim and has

also failed to refute defendants' assertion that they are entitled to qualified immunity.  (Id.)

## APPLICABLE LEGAL STANDARDS

I.  Summary Judgment Standards under Rule 56

   Summary judgment is appropriate when there exists "no genuine issue as to any

material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Caltrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here

the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.  Summary judgment should be entered, after

---

[3] The court notes that Doc. Nos. 87 and 92 submitted by plaintiff are exact duplicates of one another.

1    adequate time for discovery and upon motion, against a party who fails to make a showing

2    sufficient to establish the existence of an element essential to that party's case, and on which that

3    party will bear the burden of proof at trial.  See Id. at 322.  "[A] complete failure of proof

4    concerning an essential element of the nonmoving party's case necessarily renders all other facts

5    immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

6    whatever is before the district court demonstrates that the standard for entry of summary

7    judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

8             If the moving party meets its initial responsibility, the burden then shifts to the

9    opposing party to establish that a genuine issue as to any material fact actually does exist.  See

10   Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

11   establish the existence of this factual dispute, the opposing party may not rely upon the

12   allegations or denials of its pleadings but is required to tender evidence of specific facts in the

13   form of affidavits or admissible discovery material, in support of its contention that the dispute

14   exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must

15   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

16   suit under the governing law (see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);

17   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987)), and

18   that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict

19   for the non-moving party (see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.

20   1987).

21            In the endeavor to establish the existence of a factual dispute, the opposing party

22   need not establish a material issue of fact conclusively in its favor; it is sufficient that "the

23   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

24   versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

25   judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

26   /////

1   genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

2   committee's note on 1963 amendments).

3           In resolving a summary judgment motion, the court examines the pleadings,

4   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

5   any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

6   477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

7   court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

8   Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

9   produce a factual predicate from which the inference may be drawn.  See Richards v. Neilsen

10  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

11  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

12  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

13  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

14  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (internal citation omitted).

15          The court "is not required to comb through the record to find some reason to deny

16  a motion for summary judgment."  Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026,

17  1029 (9th Cir. 2001).  Instead the "party opposing summary judgment must direct the Court's

18  attention to specific triable facts."  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th

19  Cir. 2003).  Statements in a brief, unsupported by evidence in the record, cannot be used to create

20  an issue of fact.  Barnes v. Independent Auto Dealers, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

21          On March 9, 2010, the court advised plaintiff of the requirements for opposing a

22  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  (Doc. No. 11)  On August

23  10, 2012, contemporaneously with defendant McClure's filing of his motion for summary

24  judgment and pursuant to the Ninth Circuit's decision in Woods v. Carey, 684 F.3d 934 (9th Cir.

25  2012), plaintiff was once again advised of the requirements for opposing a motion pursuant to

26  Rule 56 of the Federal Rules of Civil Procedure.  (Doc. No. 81-1.)  See Rand v. Rowland, 154

7

1   F.3d 952, 957 (9th Cir. 1998) (en banc).  Defendants Fecht, Ferguson and Fox filed their now-

2   pending motion for summary judgment just one week later, on August 17, 2012.

3   II.  Legal Standards Governing Actions Brought Under 42 U.S.C. § 1983

4                    The Civil Rights Act under which this action was filed provides as follows:

5                    Every person who, under color of [state law] . . . subjects, or causes
                     to be subjected, any citizen of the United States . . . to the
6                    deprivation of any rights, privileges, or immunities secured by the
                     Constitution . . . shall be liable to the party injured in an action at
7                    law, suit in equity, or other proper proceeding for redress.

8   42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

9   actions of the defendants and the constitutional deprivation alleged to have been suffered by the

10  plaintiff.  See generally Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); see also Rizzo v.

11  Goode, 423 U.S. 362 (1976).  "A person 'subjects' another to the deprivation of a constitutional

12  right, within the meaning of § 1983, if he does an affirmative act, participates in another's

13  affirmative acts or omits to perform an act which he is legally required to do that causes the

14  deprivation of which complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

15                              **DISCUSSION**

16  I.  Objections to Plaintiff's Evidence

17                    As noted above, plaintiff's declarations submitted in support of his opposition to

18  defendants' motion for summary judgment were either unsigned or not signed under penalty of

19  perjury as required.  (See Doc. No. 81-1) (advising plaintiff that "[u]nsigned affidavits or

20  declarations will be stricken, and affidavits or declarations not signed under penalty of perjury

21  have no evidentiary value.").  Nonetheless, the facts alleged in plaintiff's verified complaint have

22  the same effect as averments made in an affidavit signed under penalty of perjury in refuting

23  defendants' evidence to the extent they are based on plaintiff's personal knowledge and are

24  otherwise admissible.  See Schroeder v. McDonald, 55 F.3d 454, 460 (9th Cir. 1995); see also

25  Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) ("[B]ecause [plaintiff] is pro se, we must

26  consider as evidence in his opposition to summary judgment all of [his] contentions offered in

8

1  motions and pleadings, where such contentions are based on personal knowledge and set forth

2  facts that would be admissible in evidence, and where [he] attested under penalty of perjury that

3  the contents of the motions or pleadings are true and correct.") Here, plaintiff's only verified

4  pleading is his complaint.  Plaintiff therefore fails to dispute any of defendants' facts except to

5  the extent those facts are disputed by allegations in his verified complaint which was signed

6  under penalty of perjury.

7  II.  Retaliation

8            Retaliation by a state actor for the exercise of a constitutional right is actionable

9  under 42 U.S.C. § 1983 even if the act, when taken for different reasons, would have been

10 proper.  Mt. Healthy City Bd. of Educ. v. Doyle, 429 U.S. 274, 283-84 (1977).  "Within the

11 prison context, a viable claim of First Amendment retaliation entails five basic elements:  (1) an

12 assertion that a state actor took some adverse action against an inmate[4] (2) because of (3) that

13 prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

14 Amendment rights,[5] and (5) the action did not reasonably advance a legitimate correctional goal.

15 Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).  To show that the

16 adverse action was taken because of protected conduct, a plaintiff must submit evidence linking

17 the alleged retaliation to the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802,

18 807 (9th Cir. 1995); Mt. Healthy City School Dist. Bd. Of Educ, 429 U.S. at 287 ("[I]n this case,

19 the burden was properly placed upon [the plaintiff] to show that his conduct was constitutionally

20 protected, and that this conduct was a 'substantial factor' or to put it in other words, that it was a

21

22      [4] For purposes of evaluating a retaliation claim, an adverse action is action that "could
chill a person of ordinary firmness from continuing to engage in the protected activity[]."  Pinard
23 v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006).  See also White v. Lee, 227 F.3d
1214, 1228 (9th Cir. 2000).
24
        [5] Prisoners have a constitutional right to file prison grievances and pursue civil rights
25 litigation in the courts.  See Rhodes, 408 F.3d at 567.  Prison officials may not retaliate against
prisoners for exercising these rights.  Id. at 568; see also Hines v. Gomez, 108 F.3d 265, 267 (9th
26 Cir. 1997); Bradley v. Hall, 64 F.2d 1276, 1279 (9th Cir. 1995).

1   'motivating factor' in the [alleged retaliatory conduct]").  However, retaliation may also be

2   inferred from the timing and nature of the alleged retaliatory activities. Pratt, 65 F.3d at 808

3   (citing Sorrano's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1316 (9th Cir. 1989)).  Nonetheless, a

4   mere allegation of a retaliatory motive is insufficient to defeat a motion for summary judgment.

5   See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

6         The Ninth Circuit has found that preserving institutional order, discipline and

7   security are legitimate penological goals which, if they provide the motivation for an official act

8   taken, will defeat a claim of retaliation.  Barnett, 31 F.3d at 816; Rizzo v. Dawson, 778 F.2d 527,

9   532 (9th Cir. 1985) ("Challenges to restrictions of first amendment rights must be analyzed in

10   terms of the legitimate policies and goals of the correctional institution in the preservation of

11   internal order and discipline, maintenance of institutional security, and rehabilitation of

12   prisoners.").  The burden is thus on plaintiff to demonstrate that legitimate correctional purposes

13   did not motivate the actions by prison officials about which he complains.  See Pratt, 65 F.3d at

14   808 ("[Plaintiff] must show that there were no legitimate correctional purposes motivating the

15   actions he complains of.").  However, the Ninth Circuit has also held that "prison officials may

16   not defeat a retaliation claim on summary judgment simply by articulating a general justification

17   for a neutral process, when there is a genuine issue of material fact as to whether the action was

18   taken in retaliation[.]" Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003).

19         The following facts material to plaintiff's claim that Fecht, Ferguson and Fox

20   retaliated against him for engaging in protected conduct are undisputed by the parties.  Under

21   CDCR policy, an officer who uses or witnesses the use of force is required to inform the

22   Lieutenant on duty and complete a CDC 837 Crime/Incident Report before the completion of his

23   or her shift.  (Doc. No. 84 at 1.) The Lieutenant on duty at the time of the incident is to put

24   together the Crime/Incident Report package, which includes a summary of the incident as

25   reported through staff reports by each staff member who was involved or witnessed any part of

26   /////

1   the incident and any pertinent CDC 7219 Medical Report of Injury or Unusual Occurrence

2   completed by medical personnel.  (Id.)

3             In preparing the 837 Crime/Incident package, the Lieutenant reviews all submitted

4   statements for completion; if any inconsistencies appear, any relevant information is missing, or

5   the Lieutenant has any questions about the incident, the Lieutenant requests additional

6   information through written clarification requests.  (Id. at 1-2.)  The Lieutenant also reviews all

7   submitted Crime/Incident Report information to confirm that all reporting procedures were

8   complied with, as well as to perform a confidential use of force evaluation to determine whether

9   the use of force complied with all policies and procedures.  (Id. at 2.)

10            Following the Lieutenant's review of the Crime/Incident Report and confidential

11  use of force evaluation, the Facility Captain reviews the Crime/Incident Report to determine

12  whether the use of force was reasonable and whether staff complied with all pertinent policies

13  and procedures.  (Id.)  If the officer acted inappropriately, an Internal Affairs investigation is

14  commenced, and if the inmate acted inappropriately, the inmate may simultaneously receive a

15  CDC 115 Rules Violation Report.  (Id.)

16            Correctional officer McClure used force on plaintiff on April 22, 2009.  (Id.)  On

17  April 23, 2009, Fox (in his capacity as Correctional Captain) and Ferguson (in his capacity as

18  Correctional Lieutenant) learned that this use of force had occurred the day before and that an

19  837 Crime/Incident report had not been prepared.  (Id.)  Fox instructed Ferguson to get an 837

20  Crime/Incident Report from the involved officers, and Ferguson complied.  (Id.)  The 837

21  Crime/Incident Report package was prepared and completed by April 29, 2009.  (Id.)  Defendants

22  Ferguson and Fox concluded that correctional officer McClure and Montes had violated policy

23  during the use of force incident by failing to timely report the use of force and prepare a 837

24  Crime/Incident Report before the end of their shift, and by failing to seek an immediate medical

25  evaluation of plaintiff to address injuries, if any.  (Id. at 3.)  Defendants Ferguson and Fox both

26  recommended that an Internal Affairs investigation be conducted concerning the conduct of

1  officers McClure and Montes during and after the April 22, 2009 incident.  (Id.)  Defendant

2  Fecht did not participate in the preparation or submission of the CDC 837 Crime/Incident Report.

3  (Id. at 6.)

4          Correctional officer McClure issued plaintiff the RVR at issue on April 30, 2009.

5  (Id. at 3.)  Defendant Ferguson, as the incident commander for the April 22, 2009 use of force

6  incident, was precluded from participating in the RVR hearing process and had no involvement

7  in the issuance of the RVR or the subsequent prison disciplinary hearing.  (Id. at 6-7.)  Defendant

8  Fecht was the Senior Hearing Officer who presided over plaintiff's April 22, 2009 RVR on May

9  29, 2009.  (Id. at 4.)  After reviewing all of the presented evidence, and based upon a

10  preponderance of the evidence, defendant Fecht found plaintiff guilty of the disciplinary charge

11  of resisting officer McClure resulting in McClure's use of force.  (Id. at 6.)  Defendant Fox

12  reviewed the adjudicated RVR after the disciplinary hearing.  (Id.)

13          Plaintiff filed his inmate appeal against McClure on April 23, 2009, however it

14  was not received in the Appeals Office until May 5, 2009.  (Id. at 3.)  On May 6, 2009, plaintiff's

15  inmate appeal was assigned to defendant Fox for review. (Id. at 4.[6])  Defendant Fecht did not

16  know that plaintiff had filed an inmate appeal against McClure until after plaintiff's

17  commencement of this civil action.  (Id.[7])

18          In light of these undisputed facts, plaintiff has simply failed to demonstrate that

19  any conduct by defendants Fecht, Ferguson, or Fox was motivated by plaintiff's engaging in the

20  protected activity of submitting an inmate appeal complaining about the use of force against him

21  by officer McClure.  Plaintiff submitted the inmate appeal at issue on April 29, 2009.  It is

22  _____

23          [6] Although plaintiff attempts to "dispute" this fact by stating that the appeal should have
   been assigned to someone else since Fox reviewed the Crime/Incident Report, upon review of the
24  evidence submitted, this fact is deemed undisputed.

25          [7] Plaintiff states that he disputes this fact but admits he has no knowledge of when Fecht
   was made aware of his inmate appeal and submits no evidence on point.  Upon review of the
26  evidence submitted, this fact is deemed undisputed.

undisputed that it was not received in the Appeals Office until May 5, 2009, and was assigned to defendant Fox for review the following day, on May 6, 2009.  It is also undisputed that by this time, defendants Ferguson and Fox had already completed the incident report recommending that an Internal Affairs investigation be conducted concerning the conduct of officers McClure and Montes.  Although plaintiff baldly alleges that some of the information in the incident report was either false or incomplete and retaliatory, he presents no evidence to support his assertion in this regard.  Moreover, because the incident report was prepared before plaintiff's inmate grievance was received, not even the timing of those events suggests retaliation on the part of the defendants.

Plaintiff also has come forward with no evidence supporting his allegations that: (1) defendant Fecht's conduct in finding plaintiff guilty of the RVR; and (2) defendant Fox's conduct in reviewing the RVR result were motivated by an intent to retaliate against plaintiff due to plaintiff's filing of an inmate appeal against officer McClure.  While this alleged conduct by defendants Fecht and Fox took place after plaintiff's inmate grievance had been received, there is no direct or circumstantial evidence even suggesting retaliation as a motivation for that conduct.  Of course, the timing of events alone does not suffice to demonstrate retaliation.  See Huskey v. City of San Jose, 204 F.3d 893, 899 (9th Cir. 2002) (A retaliation claim cannot rest on the logical fallacy of *post hoc, ergo propter hoc*, literally, "after this, therefore because of this." )

In sum, plaintiff's contentions that defendants Fecht, Ferguson and Fox retaliated against due to his filing of an inmate appeal against officer McClure are supported only by sheer speculation.  Speculation is not probative evidence providing the crucial link between plaintiff's filing of a grievance against McClure and the conduct by defendants Fecht, Ferguson and Fox. This case is distinguishable from cases in which a retaliation claim has survived summary judgment due to the timing of events combined with a defendant's statements to a plaintiff which raised questions regarding the defendant's motives.  See Brodheim v. Cry, 584 F.3d 1262 (9th Cir. 2009) (summary judgment denied on retaliation claim where evidence revealed that the

1  defendant litigation coordinator had warned plaintiff "to be careful what you write"); <u>Bruce v.</u>

2  <u>Ylst</u>, 351 F.3d 1283, 1289 (9th Cir. 2003) (summary judgment precluded where, in addition to

3  suspect timing and reliance on stale evidence, plaintiff's declaration stated that defendant

4  correctional officer told plaintiff that due to his complaints and protests the defendant was going

5  to validate him as a gang member).

6          Here, the inmate appeal filed by plaintiff did not involve any of these defendants.

7  Nor has plaintiff presented any evidence that their conduct was motivated by retaliation, such as

8  a history of friction or disputes with plaintiff, or statements by these defendants indicating that

9  their conduct was motivated by his filing of the inmate appeal against McClure.  To the contrary,

10  the undisputed evidence in the record refutes plaintiff's retaliation claim.  Accordingly, plaintiff

11  has failed to make any showing supported by evidence that his rights under the First Amendment

12  were violated.  The motion for summary judgment filed by defendants Fecht, Ferguson and Fox

13  with respect to plaintiff's retaliation claim should therefore be granted.  <u>See</u> <u>Celotex Corp.</u>, 477

14  U.S. at 323-24 (summary judgment should be entered, after adequate time for discovery and upon

15  motion, against a party who fails to make a showing sufficient to establish the existence of an

16  element essential to that party's case, and on which that party will bear the burden of proof at

17  trial).

18  III.  <u>Due Process</u>

19          The Due Process Clause protects against the deprivation of liberty without due

20  process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  Liberty interests may arise from

21  the Due Process Clause itself or from an expectation or interest created by state laws or policies.

22  <u>Wilkinson v. Austin</u>, 545 U.S. 209, 221 (2005).  To determine whether a due process violation

23  has occurred, a court determines whether the person possesses a liberty interest with which the

24  state has interfered, and, if so, whether the person was afforded the requisite procedural and

25  evidentiary safeguards.  <u>See</u> <u>Wilkinson</u>, 545 U.S. at 221-24; <u>Sandin v. Connor</u>, 515 U.S. 472

26  (1995); <u>Kentucky Dept. of Corr. v. Thomas</u>, 490 U.S. 454, 460 (1989).

1    "Prison disciplinary proceedings are not part of a criminal prosecution, and the

2    full panoply of rights due a defendant in such proceedings does not apply." Wolff, 418 U.S. at

3    556.  In the context of a  prison disciplinary hearing resulting in the loss of good time, due

4    process is satisfied if the inmate receives:

5               (1) advance written notice of the disciplinary charges; (2) an
                opportunity, when consistent with institutional safety and
6               correctional goals, to call witnesses and present documentary
                evidence in his defense; and (3) a written statement by the
7               factfinder of the evidence relied on and the reasons for the
                disciplinary action.

8

9    Superintendant v. Hill, 472 U.S. 445, 454 (1985).  In addition, a finding of guilt must be

10   supported by some evidence in the record.  Id.

11          The following facts material to plaintiff's claim that defendants Fecht and Fox

12   violated his due process rights are undisputed by the parties.  Defendant Fecht was the Senior

13   Hearing Officer who presided over plaintiff's April 22, 2009 RVR, and defendant Fox reviewed

14   the outcome of that disciplinary hearing in his capacity as Correctional Captain.  (Doc. No. 84 at

15   4, 7.)  At the commencement of plaintiff's hearing on May 29, 2009, defendant Fecht reviewed

16   the RVR package and confirmed that all polices and procedures had been complied with.  (Id. at

17   4.)  Defendant Fecht read plaintiff the charges levied against him, plaintiff then entered a plea of

18   "not guilty" and stated that he did not resist McClure.  (Id.)  During the disciplinary hearing,

19   plaintiff requested the following witnesses:  inmate Mayfield, inmate Shafer, inmate Lynch,

20   Officer Montes, Officer McClure, and Sergeant Thomas.  (Id. at 5.)  Defendant Lieutenant Fecht

21   denied plaintiff's requests for the inmate witnesses as well as his requests for Sergeant Thomas

22   and Officer Montes to be called as witnesses.  (Id.)  Defendant Fecht granted plaintiff's request

23   for Officer McClure as a witness, and plaintiff was allowed to ask McClure four of the five

24   /////

25   /////

26   /////

1  questions he wished to ask of him.  (Id.)[8]  In addition to the live testimony of Officer McClure

2  and the written testimony of correctional officers Montes and Thomas, the other evidence

3  presented at plaintiff's disciplinary hearing was the RVR, including the Investigative Employee's

4  report, Crime/Incident Report, and CDC 7219 Medical Report of Unusual Injury or Occurrence.

5  (Id. at 6.)

6          Based upon a preponderance of the evidence presented, defendant Fecht found

7  plaintiff guilty of resisting Officer McClure resulting in McClure's use of force.  (Id.)  As a

8  result, plaintiff lost 90 days of credit and was referred to the Institutional Classification

9  Committee for a Security Housing Unit assessment.  (Id.)

10          On June 24, 2009, defendant Fox reviewed the adjudicated RVR to ensure that all

11  procedural safeguards had been satisfied, that the RVR adjudication findings were based on fact

12  as reported in the RVR package, and that the imposed penalty was within the guidelines set forth

13  in Title 15 of the California Code of Regulations.  (Id. at 7.)

14          Because defendant Ferguson was the incident commander in connection with the

15  April 22, 2009 incident, he did not participate in the RVR hearing process, and had no

16  involvement in the issuance of the RVR or the subsequent determination of plaintiff's guilt on

17  that disciplinary charge.  (Id. at 6-7.)

18          Plaintiff claims that his due process rights were violated because defendant Fecht

19  denied some of his requests to call witnesses.  (Doc. No. 89 at 1-2.)  Indeed, the only disputed

20  material facts in regard to plaintiff's due process claims against defendants Fecht and Fox are

21  /////

22

23          [8]  The only question plaintiff was not allowed to ask of McClure was why McClure did
      not simply let go of the handcuffs if plaintiff was already secured inside his cell.  (Id. at 5.)  At
24    the disciplinary hearing defendant Fecht explained to plaintiff that the question was disallowed
      because plaintiff could have used the handcuffs as a weapon even if he was secured inside the
25    cell.  (Doc. No. 84 at 5-6.)  While plaintiff claims to dispute this fact, in actuality he disputes
      only the propriety of, and not the fact of, defendant Fecht's explanation for not allowing plaintiff
26    to ask this question of McClure.  (Doc. Nos. 84 at 5-6; 88 at 3.)  Accordingly, this fact is deemed
      by the court to be undisputed.

1 those relating to the reasons given by Fecht in denying plaintiff's request that Officer Montes,

2 Sergeant Thomas, and two inmates be called as witnesses at his disciplinary hearing.

3         Defendant Fecht denied plaintiff's request for the two inmate witnesses because

4 he found that the inmates would not have been able to provide any direct testimony of what had

5 occurred, since plaintiff was in his cell alone at the time of the incident and any view these

6 inmate witnesses could have had was obstructed and they could have viewed only through a

7 small crack between the door and the wall.  (Doc. No. 83-1 at 4.)  Fecht denied plaintiff's request

8 that Sergeant Thomas and Officer Montes appear at the hearing as witnesses because he found

9 that neither were available at the time of the hearing and plaintiff was unable to identify what

10 information they could provide that was not already in the record in their CDC 837

11 Crime/Incident Reports.  (Id.)  Accordingly, in conducting the disciplinary hearing Fecht

12 stipulated to the testimony of Sergeant Thomas and Officer Montes as set forth in the 837

13 Crime/Incident package in lieu of live testimony.  (Id. at 5.)

14         Plaintiff argues that the inmate witnesses he requested "heard the entire

15 conversation between Officers McClure, Montes, and [plaintiff]."  (Doc. No. 88 at 2.)  He also

16 asserts that Sergeant Thomas and Officer Montes could have been contacted by telephone, and

17 that he was never asked by Fecht to identify what information those witnesses could have

18 provided.  (Id. at 3.)  In opposition to defendants motion for summary judgment, plaintiff argues:

19         [Fecht] failed to discuss the stipulated testimony with Plaintiff.
        [Fecht] failed to document the stipulation agreement with Plaintiff
20         regarding the testimony that the absent witnesses may have given if
        present.  [Fecht] failed to document any information regarding the
21         Reporting Employee presence at the Disciplinary Hearing, or theri
        [sic] avilibility [sic] via speakerphone if required.  RVR hearing
22         summary should have included a detailed review and explanation
        with regard to all witnessed, and the stipulation of thier [sic]
23         testimony.  [Fecht] failed to articulate the reasons for the
        stipulation of witness testimony, and the presence or availability of
24         the Reporting Employee.  (See Complaint Pg. 116, & 117 Of 132.)

25 (Doc. No. 89 at 2)

26 /////

1          CDCR departmental rules provide that an inmate may request the appearance of

2    friendly and adverse witnesses at a disciplinary hearing. 15 Cal. Code Regs. § 3315(e).  The

3    official conducting the hearing may refuse to call a requested witness if he or she determines that

4    the requested witness has no relevant or additional information.  Id.; § 3315(e)(1)(B).  If an

5    inmate's request for a witness is denied, the reasons should be documented.  Id.; § 3315(e)(2).

6    Review of the evidence submitted on summary judgment demonstrates that defendant Fecht's

7    reasons for denying plaintiff's request for the appearance of these witnesses were  documented in

8    accordance with this policy.  (Doc. No. 81-4 at 14.)  In addition, the record supports defendants'

9    assertion that Fecht properly denied plaintiff's requests for these witnesses as unnecessary.  See

10   Wolff, 418 U.S. at 566 (prison officials may deny witnesses where their testimony would unduly

11   extend the hearing or be unnecessary).

12          Plaintiff makes no attempt to explain what additional information the requested

13   staff witnesses could have provided that was not already in their written reports which defendant

14   Fecht considered.  In addition, while plaintiff alleges that the inmate witnesses he requested had

15   heard the conversation between himself and officers Montes and McClure, he does not dispute

16   defendant Fecht's assertion that those inmate witnesses could not have seen what happened in

17   plaintiff's cell from their cells.  A letter purportedly written by inmate Mayfield is attached to

18   plaintiff's complaint and states that Mayfield heard plaintiff yelling loudly "Stop that your [sic]

19   hurting my arm."  (Doc. No. 1 at 22.)  In a declaration under penalty of perjury purportedly

20   authored by inmate Lynch, it is stated that Lynch heard "a shrill cry coming from cell 148," and

21   that he later heard plaintiff "telling an officer that the officer had injured [plaintiff] by the

22   excessive force applied while removing the handcuffs . . . ."  (Doc. No. 1 at 23.)  This evidence,

23   however, fails to refute the validity of defendant Fecht's reasons for denying plaintiff's request

24   that these inmate witnesses appear at his disciplinary hearing.  Rather, it remains undisputed that

25   these inmates did not and could not have seen whether plaintiff physically resisted Officer

26   McClure resulting in McClure's use of force.

1    Under these circumstances, plaintiff has failed to present any evidence

2    establishing the existence of a triable issue of material fact as to whether he was denied the

3    testimony of a witness or witnesses who could have offered relevant evidence in his favor at his

4    disciplinary hearing.  See Wolff, 418 U.S. at 566 ("Prison officials must have the necessary

5    discretion . . . to refuse to call witnesses [for reasons such as] irrelevance [or] lack of necessity . .

6    . ."); Mack v. Lamarque, No. 06-15915, 2009 WL 2013129 at *1 (9th Cir. June 16, 2009)[9] ("The

7    district court properly granted summary judgment on Mack's due process claim against

8    defendant Mirich arising from Mirich's refusal to allow Mack to call two witnesses at Mack's

9    disciplinary hearing, because Mack failed to raise a genuine issue of material fact as to whether

10   those witnesses would have provided any additional, relevant evidence.") (citing Wolff, 318 U.S.

11   at 566)); Palmer v. Salazar, No. C 08-5378 SI (pr), 2011 WL 3046217 at *10 (N.D. Cal. July 25,

12   2011) ("While Wolff allows an inmate a limited right to call witnesses, it is illogical to argue that

13   the right is implicated whenever a prisoner asserts that he intends to call additional witnesses to

14   present undescribed testimony."); Ramirez v. Galaza, No. 1:99-CV-6282 OWW DLB P, 2006

15   WL 2320572 at *6 (E.D. Cal. Aug. 10, 2006) ("While Plaintiff makes the conclusory allegation

16   that the denial of witnesses violated his due process rights, he does not proffer what the

17   substance of their testimony would have been or how it could have helped him . . . .  Thus,

18   Plaintiff has failed to present any facts which would raise a triable issue that he was denied the

19   testimony of a witness who would offer relevant evidence in his favor."); Compare Serrano v.

20   Francis, 345 F.3d 1071, 1080 (9th Cir. 2003) (holding that due process was violated where the

21   hearing officer gave no reason for refusing plaintiff's request for live inmate testimony at his

22   prison disciplinary hearing).

23    Thus, even assuming, solely for purposes of the pending summary judgment

24   motion, that plaintiff had a liberty interest in the outcome of the RVR and the accompanying loss

25

26    [9]  Citation to this unpublished Ninth Circuit opinion is appropriate pursuant to Ninth
     Circuit Rule 36-3(b).

19

1   of good time credits for which he was entitled to the process required by Superintendant v. Hill,

2   472 U.S. at 454, the undisputed facts before this court on summary judgment demonstrate that he

3   received all the procedural and evidentiary safeguards to which he was due.[10]

4          Accordingly, defendants Fecht and Fox are entitled to summary judgment in their

5   favor on plaintiff's claim that his due process rights were violated when his request for certain

6   witnesses at his May 29, 2009 disciplinary hearing was denied.

7   IV.  Conspiracy

8          To succeed on a civil rights conspiracy claim under § 1983, a plaintiff must show

9   that the defendants had an agreement or a meeting of the minds to violate plaintiff's

10  constitutional rights.  See Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002); Woodrum v.

11  Woodward County, 866 F.2d 1121, 1126 (9th Cir. 1989); Fonda v. Gray, 707 F.2d 435, 438 (9th

12  Cir. 1983).  "To be liable, each participant in the conspiracy need not know the exact details of

13  the plan, but each participant must at least share the common objective of the conspiracy."  See

14  Franklin, 312 F.3d at 441.

15         Here, plaintiff has failed to come forward with any evidence that defendants

16  Fecht, Ferguson and Fox conspired to violate his constitutional rights.  The basis of plaintiff's

17  conspiracy claim is that the named defendants conspired together to issue a false CDC 837

18  Crime/Incident Report in order to protect Officer McClure in connection with his excessive use

19  of force and to ensure that plaintiff was found guilty on the RVR belatedly issued by McClure

20  against plaintiff.  Such a claim is based entirely on speculation.  Plaintiff has not alleged nor

21

22         [10]  Defendant's also argue that plaintiff has no constitutionally cognizable due process
    interest in the RVR proceedings because, as a life-sentenced inmate, the outcome of his
    disciplinary hearing did not alter the length of his confinement.  (Doc. No. 83-6 at 17) (citing
23  Sandin, 515 U.S. at 483-84).  The cited pages of the Sandin decision, however, do not directly
    support defendants' argument in this regard.  Because the parties have not adequately addressed
24  this issue, nor fully developed the record with respect to nature of the life sentence plaintiff is
    serving, the undersigned declines to resolve the pending motion for summary judgment on this
25  asserted ground.  Moreover, in light of the court's finding that the undisputed evidence
    establishes that plaintiff received all of the process to which he was due, the court need not
26  address this alternative grounds for summary judgment advanced by defendants.

1  proved any specific facts suggesting such an agreement between the defendants.  Plaintiff's

2  conclusory assertions that defendants conspired do not support a claim for a constitutional

3  violation.  See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982) ("Vague and

4  conclusory allegations of official participation in civil rights violations are not sufficient . . . . ").

5  Moreover, for the reasons discussed herein, the conspiracy claim fails because plaintiff "does not

6  show that any actual deprivation of his constitutional rights resulted from the alleged

7  conspiracy."  Woodrum, 866 F.2d at 1126 (conclusory allegations of a conspiracy do not support

8  a claim under § 1983).  See also Olsen v. Idaho State Bd. of Medicine, 363 F.3d 916, 929 (9th

9  Cir. 2004) (dismissal of § 1985 conspiracy claim proper where the plaintiff "failed to allege

10  sufficiently that the appellees conspired to violate her civil rights"); Taylor v. List, 880 F.2d

11  1040, 1045 (9th Cir. 1989) (unsupported, conclusory allegations are insufficient to preclude

12  summary judgment);

13           Summary judgment should therefore be entered in favor of defendants Fecht,

14  Ferguson and Fox with respect to plaintiff's civil rights conspiracy claim as well.

15                                              CONCLUSION

16           For the reasons stated above, IT IS HEREBY RECOMMENDED that:

17           1.  Defendants' August 17, 2012 motion for summary judgment (Doc. No. 83) be

18  GRANTED and summary judgment be entered in favor of defendants Fecht, Ferguson and Fox.

19           These findings and recommendations are submitted to the United States District

20  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

21  days after being served with these findings and recommendations, any party may file written

22  objections with the court and serve a copy on all parties.  Such a document should be captioned

23  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

24  shall be served and filed within seven days after service of the objections.  The parties are

25  /////

26  /////

advised that failure to file objections within the specified time may waive the right to appeal the

District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 28, 2013.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD: 11
guer0318.msj

22